IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JILL GATTO,<br><br>    *Plaintiff*,<br><br>v.<br><br>JOHNSON & JOHNSON SERVICES, INC.,<br><br>    *Defendant*. | Civil Action No. 2:23-cv-1607<br><br>Hon. William S. Stickman IV |

## **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

  Plaintiff Jill Gatto ("Gatto") sought and obtained an accommodation from her employer, Defendant Johnson & Johnson Services, Inc.'s ("Johnson & Johnson") COVID-19 vaccine policy. The granted accommodation required her to wear a mask and receive daily nasal swab testing for the virus. Gatto then sought an accommodation from the accommodation, which Johnson & Johnson denied. She was terminated and then filed this action. In her amended complaint ("Amended Complaint"), Gatto brings two counts of religious discrimination and retaliation against Johnson & Johnson—one under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981 *et seq.* ("Title VII") (Count I) and the other pursuant to the Pennsylvania Human Relations Act, 43 Pa. Stat. § 951 *et seq.* ("PHRA") (Count II). She alleges that the company "failed and refused to reasonably accommodate [her] religious observances and/or practices" and terminated her because of her religion due to her objections to its COVID-19 nasal swab testing policy. (ECF No. 11, ¶¶ 27, 29, 35). Johnson & Johnson filed its Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion") asking the Court to dismiss all claims asserted against it with prejudice. (ECF No. 15).

1

## I.   FACTUAL BACKGROUND

Gatto worked for Johnson & Johnson as an Executive Cardiovascular Sales Specialist from February 1, 2016, to October 29, 2021. (ECF No. 11, ¶ 3). She is a "life-long devout member of the Christian faith," who believes her body to be a temple of the Holy Spirit. (*Id.* ¶¶ 5–6). To maintain this temple in accordance with her faith, she cannot inject foreign substances nor medical products that were not created by God himself into her body or modify her genetics. (*Id.* ¶¶ 8, 10, 18–19).

On August 6, 2021, Johnson & Johnson sent an email to its staff stating its expectation that employees "meet all reasonable credentialing requirements" from the company's hospital clients. (ECF No. 11-1, p. 1). Johnson & Johnson specifically highlighted that at the time of the email, "COVID-19 vaccination is currently not a requirement for employment at [Johnson & Johnson] in the U.S.," although it believed it "to be a reasonable requirement for credentialing." (*Id.*). The email also provided guidance for how individuals with a medical disability or a religious exemption could open a case to receive an exception. (*Id.*).

The following week, on August 13, 2021, Gatto sent a letter (the "August Letter") outlining her exemption request, specifically seeking exemption "from any and all mandated vaccinations / immunizations," and the religious beliefs her request was grounded upon. (*Id.*). The document discussed Gatto's overarching belief that her body is a temple, which requires her to not only preserve her physical being to the best of her ability, but to also become as informed as possible about all materials placed into her temple. (*Id.*). Gatto highlighted that she believes immunizations implicate her opposition to any type of murder and would cause her to ingest something which has been genetically modified by man and contains the flesh of other species through a process which bypasses the normal detoxification process. (*Id.* at 1–2). Gatto included that she is opposed to

nasal administration of a medical product because it "bypasses the normal detoxification pathway (i.e., eating or drinking) [and] is contrary to how God intended the human body to function." (*Id.* at 2). During the accommodation process for her vaccination objection, Gatto alleges that she also tried to explain her religious beliefs related to nasal testing but to no avail. (ECF No. 11, ¶ 9).

Johnson & Johnson granted Gatto's request on August 25, 2021, and notified her that as an accommodation, she would be required to wear a mask and submit to daily nasal swab testing. (*Id.* ¶ 8). Almost one month later, on September 23, 2021, Gatto sent another letter requesting an exemption from "all mandated Covid testing" (the "September Letter"). (ECF No. 11-2, p. 1). She stated she was "religiously opposed to any testing (such as BinaxNOW) which requires insertion of foreign matter into my body as well as collection of my bodily fluids and reporting results." (*Id.*). She directed the reader to the August Letter for a detailed description of her fundamental religious principles. (*Id.*).

Johnson & Johnson denied the exemption from nasal swab testing on September 27, 2021. (ECF No. 11, ¶ 8). Gatto was placed on unpaid leave on October 4, 2021, and subsequently terminated on October 29, 2021. (*Id.* ¶¶ 8, 14).

## II.     STANDARD OF REVIEW

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court

must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

Generally, a court may not consider an extraneous document when reviewing a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). If parties present matters outside the pleadings and the court does not exclude them, the motion must be converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). When reviewing the sufficiency of a complaint, however, a court may consider attachments to it without converting the motion into one for summary judgment if they are integral to the allegations in the complaint and are authentic. *See In re Burlington*, 114 F.3d at 1426 (holding that a court may consider a "document integral to or explicitly relied upon in the complaint"); *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) (same); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (same); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to

a pleading is a part of the pleading for all purposes."). Gatto attached three documents to her Amended Complaint that the Court will consider in adjudicating the Motion: (1) the August Letter; (2) the September Letter; and (3) a declaration she prepared. (ECF Nos. 11-1, 11-2, 11-3).

### III.   ANALYSIS

Gatto brings claims for religious discrimination and retaliation in violation of Title VII and the PHRA, respectively. (ECF No. 11, ¶¶ 26–35). She alleges both counts arise as a result of Johnson & Johnson's denial of her request for a religious exemption from the company's nasal swab testing requirement, which itself was an accommodation for the religious exemption it granted her from its COVID-19 vaccination policy. The Court is reluctant to evaluate the contours of Gatto's religious beliefs. However, the standard of review requires it to examine whether she has plausibly alleged the existence of a sincerely held religious belief. Taking the facts alleged in a light most favorable to her, the Court finds that Gatto has not sufficiently alleged that she has a sincerely held religious belief that conflicted with Johnson & Johnson's nasal testing requirement. For the reasons stated below, she fails to plausibly make out a claim under either Title VII or the PHRA.

**A. The Court will review Gatto's Title VII and PHRA claims together.**

"Under Title VII, it is unlawful for an employer to 'discharge ... or otherwise to discriminate against any individual with respect to h[er] compensation, terms, conditions or privileges of employment, because of ... religion.'" *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 319 (3d Cir. 2008) (alteration in original) (quoting *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 224 n.4 (3d Cir. 2000)). An employer "must make reasonable accommodations for its employees' religious beliefs and practices unless doing so would create an 'undue hardship' for the employer. *Id.* (citation omitted). Similarly, the PHRA makes it unlawful

for any employer to discriminate against an individual because of "religious creed." 43 Pa. Stat. § 955(a). The Court considers Gatto's Title VII and PHRA claims together. *See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 n.5 (3d Cir. 2006) ("We construe Title VII and the PHRA consistently."); *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001) ("The analysis of [Title VII and PHRA] claims is identical."); *Bailey v. Storlazzi*, 729 A.2d 1206, 1211 n.6 (Pa. Super. 1999) ("The PHRA is generally applied in accordance with Title VII.").

Gatto first alleges that Johnson & Johnson discriminated against her on the basis of religion by failing to accommodate her religious beliefs and practices. (ECF No. 11, ¶¶ 29, 35). To plausibly allege a *prima facie* case for religious discrimination, an employee must show that (1) she held a sincere religious belief that conflicted with a job requirement; (2) she informed her employer of the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement. *Fallon*, 877 F.3d at 490.

Gatto also pleads in both of her claims that she suffered retaliation, in violation of Title VII and the PHRA, when Johnson & Johnson terminated her because of her sincerely held religious beliefs against nasal testing. (ECF No. 11, ¶¶ 27, 35). To establish a *prima facie* case of retaliation, a plaintiff must allege that "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between the employee's participation in the protected activity and the adverse employment action." *Wilkerson*, 522 F.3d at 320 (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006)).

While the United States Court of Appeals for the Third Circuit has not explicitly addressed the question, courts within this district have held that a plaintiff cannot plausibly state a claim of religious discrimination pursuant to Title VII under any theory of liability if he or she fails to plead

that the discrimination was due to a sincerely held religious belief. *Blackwell v. Lehigh Valley Health Network*, No. 22-3360, 2023 WL 362392, at *9 n.8 (E.D. Pa. Jan. 23, 2023) (collecting cases); *Winans v. Cox Auto., Inc.*, 669 F. Supp. 3d 394, 399 (E.D. Pa. 2023); *McKinley v. Princeton Univ.*, No. 22-5069, 2023 WL 3168026, at *3 (D.N.J. Apr. 28, 2023). Thus, as a preliminary showing, Gatto must plausibly allege the existence of a sincerely held religious belief.

A district court does not have authority to "question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989) (citation omitted). Rather, at the motion to dismiss stage, a court's limited task "is to decide whether the facts alleged by the plaintiff support the reasonable inference that h[er] beliefs are sincerely held and 'in [the believer's] own scheme of things, religious.'" *Winans*, 669 F. Supp. 3d at 400 (quoting *Fallon*, 877 F.3d at 490–91). Religious beliefs (1) "address fundamental and ultimate questions having to do with deep and imponderable matters," (2) are "comprehensive in nature," and (3) are "accompanied by certain formal and external signs." *Brown v. Children's Hosp. of Phila.*, 794 F. App'x 226, 227 (3d Cir. 2020) (citing *Fallon*, 877 F.3d at 491).

Under the first prong, "fundamental" and "ultimate" questions are those that "consider and attempt to come to terms with what could best be described as 'ultimate' questions-questions having to do with, among other things, life and death, right and wrong, good and evil." *Africa v. Pennsylvania*, 662 F.2d 1025, 1033 (3d Cir. 1981). The second prong addresses whether a principle is grounded in a religion that "consist[s] of something more than a number of isolated, unconnected ideas," where it instead "lays claim to an ultimate and comprehensive 'truth.'" *Id.* at 1035 (citation omitted). Formal and external signs under the third factor include any "signs that may be analogized to accepted religions" such as "formal services, ceremonial functions, the

7

existence of clergy, structure and organization, efforts at propagation, observation of holidays and other similar manifestations associated with traditional religions." *Id.* (citation omitted).

### B. Gatto fails to state a claim of religious discrimination under Title VII and the PHRA.

Johnson & Johnson asserts that Gatto "has not alleged that she held a sincere religious belief that prevented her from submitting to testing for the COVID-19 virus." (ECF No. 16, pp. 12, 14–19, 21). Specifically, Johnson & Johnson highlights that Gatto fails to allege in her Amended Complaint how the collection of a nasal secretion sample conflicts with her allegedly comprehensive religious beliefs that her body is a temple of the Holy Spirit. (*Id.* at 17–18); (ECF No. 20, pp. 7–9). Gatto asserts she adequately pleads that her beliefs "are deeply rooted in religion in her own scheme of things." (ECF No. 18, pp. 7, 11). And given this case's posture, Gatto urges the Court to assess the sincerity of these beliefs with "a light touch." (*Id.* at 10).

The Court finds that the Amended Complaint and its attachments do not plausibly allege that Gatto's religious beliefs related to nasal swab testing meet the requisite standard. First, in the September Letter—which Gatto wrote in response to the imposition of the testing requirement—she directs the reader to the August Letter for a detailed explanation of her religious principles. (ECF No. 11-2, p. 1). While Gatto seeks to explain her faith and the religious nature of her beliefs in the August Letter, she does so solely in the context of vaccination and immunization. She does not connect these religious objections to nasal swab testing. *See Blackwell*, 2023 WL 362392, at *8 n.7 ("Although Plaintiff's Complaint and the attachments thereto provide far more substantial information regarding nature of Plaintiff's religious beliefs as applied to Defendant's vaccination requirement, these beliefs, which primarily concern Plaintiff's religious opposition to abortion, are not applicable to, and Plaintiff does not assert they apply to, Defendant's biweekly COVID-19 nasal testing requirement."). Rather, she makes one attenuated link between her faith and "nasal

administration," referencing how it would conflict with her belief that she cannot "knowingly ingest[] anything through a process that bypasses the normal detoxification pathway (i.e. eating or drinking) [because it] is contrary to how God intended the human body to function." (ECF No. 11-1, p. 2).

The Amended Complaint does not provide any additional information about the religious nature of Gatto's beliefs and how her faith conflicts with nasal swab testing. *See Blackwell*, 2023 WL 362392, at *8. Even though she pleads that she opposes nasal testing because "it conflict[s] with her sincerely held religious beliefs not to inject foreign substances into her body," this assertion does not expand on the principle disclosed in the August Letter nor connect the ideal to her religion. (ECF No. 11, ¶¶ 8, 18–19); *Blackwell*, 2023 WL 362392, at *8. The Court finds that this belief is instead "more 'an isolated moral teaching' as opposed to a 'comprehensive system of beliefs about fundamental or ultimate matters.'" *Blackwell*, 2023 WL 362392, at *8. Accordingly, she fails to connect this stated principle to her own religious scheme of things.

Moreover, the August Letter and September Letter unequivocally undermine the sincerity and religiosity of Gatto's principles. She admits in the August Letter that her employee records detail that she receives yearly tuberculosis blood draws instead of receiving the vaccine. (ECF No. 11-1, p. 1). Such blood draws presumably require the insertion of a needle into Gatto's body to collect a sample of her bodily fluids for testing and reporting purposes. While Gatto's allegations that her and her family do not receive vaccinations of any kind demonstrate an external sign of her faith, her admission that she receives yearly tuberculosis blood draws directly contradicts this, and instead demonstrates that these beliefs are not consistently applied throughout her life. *See Blackwell*, 2023 WL 362392, at *8.

9

Accordingly, considering the pleaded facts as a whole, Gatto fails to plausibly allege that her beliefs were sincerely held and religious in nature and thus she fails to state a claim pursuant to Title VII and the PHRA under both the theory that Johnson & Johnson failed to accommodate her religious practices and retaliated against her by her termination.[1]

### C. Further amendment would be futile.

Any amendment by Gatto would be futile in the eyes of the Court. *See In re Burlington*, 114 F.3d at 1434 (stating a court may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility). "An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." 3 James Wm. Moore et al., *Moore's Federal Practice* ¶ 15.15 (3d ed. 2024).

The Court first notes that Gatto does not ask for leave to amend her failure to accommodate discrimination claims. While she requests leave to develop her retaliation argument, further attempts to amend would be futile. Gatto only presents *ipso facto* arguments, asserting that the only "plausible explanation" for her termination is retaliation. (ECF No. 18, p. 11). She fails to

---

[1] Gatto also fails to adequately plead a *prima face* case of retaliation. Johnson & Johnson first contends that Gatto's retaliation claims should be dismissed because she fails to sufficiently allege a sincerely held religious belief. (ECF No. 16, p. 21). It also asserts that Gatto fails to plead a *prima facie* case of retaliation because she has not pled that she engaged in a protected activity, let alone that this protected activity caused her termination. (ECF No. 16, p. 22); (ECF No. 20, p. 11). In her response brief, Gatto only addresses Johnson & Johnson's first argument by asserting that she "has clearly shown she has a sincerely held religious belief against both the vaccine and testing." (ECF No. 18, p. 11). The only other contention Gatto raises is that "[t]here exists no plausible explanation other than retaliation for [her] termination." (*Id.*). But these arguments fail to address whether her Amended Complaint sufficiently alleges a *prima facie* case of retaliation and instead seemingly acknowledge the deficiency in her pleading. Therefore, the Court finds that even if Gatto adequately pled that she had a sincerely held religious belief, she fails to plead a *prima facie* case of retaliation.

assert that any additional facts exist that would support a plausible *prima facie* retaliation claim. Leave to amend would be futile, and her claims will be dismissed with prejudice.

### IV. CONCLUSION

For these reasons, Defendant Johnson & Johnson's Motion will be GRANTED. Orders of Court to follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

4-29-24
Dated